SOLOMON BERNSTEIN, complainant,

*v.*

NEW JERSEY BANKERS SECURITIES COMPANY, a corporation,
et al., defendants.

[Decided May 11th, 1929.]

*Messrs. Leber & Ruback,* for the complainant.

*Messrs. Collins & Corbin,* for the defendants.

BACKES, V. C.

The directors of the New Jersey Bankers Securities Company agreed, subject to the approval of two-thirds in holdings of its stockholders, to exchange all its tangible assets, with a single exception, for one hundred fifty-two thousand three hundred and forty-nine shares of preferred stock, known as Class A, non-voting, of the Equitable Finance Corporation of New York, which would yield to the Bankers company one share of the Equitable for every shareholder's four shares in the Bankers. The bill charges that the exchange is in effect a merger and *ultra vires,* and that it is unfair and inequitable, in that an exchange on a true value basis should yield two hundred twenty-nine thousand five hundred and fifteen shares of the Equitable. A meeting of the stockholders was called to ratify the agreement. On the filing of the bill an

order to show cause issued with a temporary restraint against carrying the agreement into effect, and later another against holding the meeting. Counsel furnished the court with their affidavits before the hearing day and at the hearing, for reasons then stated and some unspoken but hereafter given, the court announced (the defendants having filed their answer) that hearing on the rule would be continued to final hearing, and for that purpose would give an early day and set the cause down for May 23d, to which Mr. Markley, counsel for the defendant, expressed entire satisfaction. He has the reporter's notes. The meritorious questions were not considered. Notwithstanding his acquiescence in the course he has appealed from the order of continuance which carries the restraint against consummating the deal but lifts the embargo on the ratification meeting. After the hearing was adjourned counsel together prepared the form of the order and upon presentation at side-bar Mr. Markley stated that he did not wish to be regarded as consenting to the order. Thinking that he desired to relieve himself of criticism from his client, if any, and to pass it on to the court, the court acquiesced. Had he expressed himself as dissatisfied or intimated a desire to proceed the hearing would have been resumed, but not on the affidavits alone. The underlying circumstances were such as to warrant a cross-examination of the affiants for fuller information than that furnished by the affidavits, and that would have been the course. That information it was hoped would be forthcoming in an open court hearing of witnesses. The court's purpose in continuing the hearing to final hearing was two-fold : to protect the directors against a responsible misstep, possibly induced by the same sinister influence that beguiled some of their predecessors into a confidence which permitted others to loot the company and despoil the stockholders; and to insure the fifteen thousand stockholders a fair and equitable exchange and protect them against a possible second raid, of which there were some ear-marks.

After the disclosure before a legislative committee which investigated the affairs of the Bankers company and the activities of Harry Weinberger, its promoter, a bill was filed for a receiver of the company in which the directors were charged

with serious misconduct in corporate management; and particularly Weinberger, the master mind, who ran riot with the company's finances and is still at large. The court sat in that case and is fully informed of the then situation. The suit was eventually discontinued upon a reorganization of the directorate and the election of the present board, the individual defendants in this action, and after Weinberger agreed to purchase one hundred seventy-two thousand and thirty-four shares of the company stock and thereby restore to its treasury $2,500,000. This, by paying $200,000 in cash and giving his note for $2,300,000, secured by collateral and a guarantee to the extent of $50,000 by each of the members of the old board responsible for the debacle. The one hundred seventy-two thousand and thirty-four shares are part of the collateral and in Mr. Markley's hands as trustee to vote them in the interest of the company.

As to the exchange: The Bankers have assets of $8,792,513.69, book value, which for exchange purposes were cut down to $5,558,584.14. The exchange values were calculated on average bid and ask quotations of the stocks of the two companies. Neither is on an exchange. It is a moot question whether this or true book values of the respective companies is an equitable basis of exchange. It would seem that the moribund Bankers is at a disadvantage and it is suggested as to the Equitable, that the market is sometimes rigged. Mr. Jelin, until recently the managing director of the Bankers, estimates the loss to his institution at $1,500,000, and in calculating the assets of the two companies at their book value arrived at the result of two and eight-tenths shares of the Bankers for one share of the Equitable, as against four for one on quoted prices; and he also points out what he regards as an unfair and apparently arbitrary reduction of $850,000 in assets value of the Bankers for purposes of the trade. It also appears in the proofs, by way of supporting the charge of unfairness of the exchange, that Weinberger initiated and negotiated the deal with one Spielberg, who controls the Equitable, and that in the first proposition of exchange, submitted by a public accountant, as advisor, the

$2,300,000 note of Weinberger was disregarded as an asset in arriving at the exchange ratio of four to one, and that in the second, made within a week, the note was taken into account at its face value and by a readjustment of the values of the other assets of the Bankers the exchange ratio remained the same, four to one. And further, in the formal agreement submitted to the stockholders for ratification it is stipulated as a condition precedent that Weinberger's written assent should be procured to the Bankers transferring his $2,300,000 note. These things give pause. The court at this time has no comment to make as to the fairness or unfairness of the contract. It may be highly beneficial to the stockholders that the exchange be made, and it may be disastrous. The court makes no criticism of the directors' conduct, treating them at this time as having acted in good faith, but the court wants to be shown. It is not unmindful that ordinarily it is not the business of the court to interfere with the management of the internal affairs of corporate bodies in the absence of fraud, but it must be observed that the present transaction is not the ordinary business of the defendant company but is what may be called a bulk sale and to all practical purposes a merger, and as to this the stockholders are entitled to the fullest discovery and protection against their trustees, the directors, in a situation where they collectively have such vast sums at stake.

The fact that the complainant has but a small holding is not overlooked, but that is irrelevant in view of the fifteen thousand shareholders for whose protection the bill is filed and who have already suffered losses of millions of dollars. Under the manipulation of the market by Weinberger, aided by an ornate and supine board of directors, the stock sold as high as $17.50 per share; today the shares are selling at five and six dollars.

The speeding up of the cause was thought to be to the advantage of all concerned. *Query:* Is there something concealed that ought to be revealed?